# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ELBERT RUTHERFORD, | : | Case No. 3:19-cv-00347 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.

Plaintiff Elbert Rutherford has been receiving Disability Insurance Benefits from the

Social Security Administration because he has been under a disability since early September

2013.  He has received monthly benefit payments and—to his credit—has attempted to

return to work.  The Administration notified him in July 2019 that he had been overpaid for

the months of April 2018 through June 2018.  He acknowledges that he continues to receive

monthly benefit payments in the amount of $1,034.  (Doc. #10, *PageID* #121).

Mr. Rutherford brings this case *pro se* asserting that the Administration has only paid

him $999 for one month rather than paying him his full benefit of $1,034.  He seeks to

recover the $35 the Administration allegedly still owes him for that month.  He further

explains that the Administration has informed him he must pay back $3,018.  He says that

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

he earned $3,018 and that the Administration is requiring him to payback this amount.  He

objects to the Administration charging him dollar for dollar for the amount $3,018 he

earned.  He asks, "If I made 3018 dollars how can the SSA make me pay back that same

amount[?]"  *Id*. at 122.

Defendant contends that dismissal of this matter is warranted for lack of jurisdiction

because Mr. Rutherford has not exhausted his administrative remedies regarding the

overpayments of benefits in April, May, and June of 2018.  Defendant and Mr. Rutherford

raise additional arguments to be addressed below.

## II.

A recipient of Disability Insurance Benefits—like Mr. Rutherford—may attempt to

return to work during a Trial Work Period without loss of disability status.  20 C.F.R. §

404.1592(a).  But certain limitations apply: The Trial Work Period is limited to nine months

in length; only the months in which the person's monthly earnings exceed specified amounts

count towards the nine-month Trial Work Period; the nine-months need not be consecutive

(but must be within sixty consecutive months); and the work performed does not amount to

substantial gainful activity.  42 U.S.C. § 422(c)(1), (3)-(4); *see* 20 C.F.R. § 1592(a)-(d).

After a person completes a Trial Work Period, the Administration continues to pay benefits

until the recipient engages in substantial gainful activity or medical evidence establishes his

or her disability has ended.  *See, e.g.,* Doc. #6, *PageID*  #s 91, 105-06.

In the fall of 2017, the Administration notified Mr. Rutherford in writing that his

work and earnings during three months of 2016 (October, November, and December) would

count towards his nine-month Trial Work Period. *Id.* at 102, 105. This notice explained to him the meaning of a Trial Work Period and further identified the amount of monthly earnings that, if he earned it, would count toward his nine-month Trial Work Period (over $810.00 per month in 2016; over $840.00 per month in 2017). *Id.* He was informed that he could appeal the Administration's determination that three months in 2016 counted toward his nine-month Trial Work Period. The notice also informed him how to pursue an appeal and that he needed to do so within 60 days. *Id.* at 103-04. And the Administration told him about the specific maximum amounts he could earn each month after his Trial Work Period ended so he could understand when his monthly earnings would become substantial gainful activity, thus ending his eligibility to receive benefits. *Id.*

In 2018, the Administration conducted a continuing disability review and concluded that medical evidence confirmed Mr. Rutherford's ongoing disability. He therefore continued to receive monthly payments of Disability Insurance Benefits. *Id.* at 87.

Things changed for Mr. Rutherford in 2019. The Administration informed him in July 2019 that he had received an overpayment of benefits for the months of April 2018 through June 2018, totaling $3,018. *Id.* at 90-91. He was notified that he was required to pay this amount back to the Administration. The Administration also informed of his right to appeal and that he had to do so within 60 days. *Id.* at 91-92. The Administration does not have records indicating that an Administrative Law Judge (ALJ) issued a decision concerning an appeal Mr. Rutherford could have pursued or that Mr. Rutherford sought review of an ALJ's decision by the Appeals Council concerning Mr. Rutherford's Disability

Insurance Benefits. *Id*. at 60, 79-80.

"Pursuant to 42 U.S.C. § 405(g), federal courts are authorized to review 'any final decision of the Commissioner of Social Security made after a hearing to which he was a party.' Although the Social Security Act does not define 'final decision,' there is not a final decision of the Commissioner until the claimant exhausts the administrative process established by the applicable regulations. *James v. Comm'r of Soc. Sec.*, No. 16-6224, 2017 WL 3391704, at *2 (6th Cir. 2017) (quoting, in part, *Willis v. Sullivan*, 931 F.2d 390, 396-97 (6th Cir. 1991)).

In order to exhaust his administrative remedies, Mr. Rutherford needed to (1) timely request reconsideration of the Administration's determination regarding his overpayment, (2) request an evidentiary hearing, (3) request a de novo review before an ALJ, and (4) appeal any adverse decision by the ALJ to the Appeals Council. *See James*, 2017 WL 3391704, at *2 (citing *Willis*, 931 F.2d at 397); *see also* 20 C.F.R. § 404.900(a)(1)-(5). On November 7, 2019 and November 8, 2019, Mr. Rutherford electronically filed Non-Medical Appeals. (Doc. #6, *PageID* #s 79, 101-02). But there is no indication that an ALJ or the Appeals Council has issued a final decision concerning those appeals. Without such a final decision, the Court lacks jurisdiction to review the Administration's overpayment determination. *See Willis,* 931 F.2d at 397; *see also James*, 2017 WL 3391704, at *2 .

Defendant notes that Form SSA-3105 informed Mr. Rutherford that the Administration has a policy to discontinue withholding money from benefit payments to recover its overpayments while a waiver request is pending even if the waiver request was

not filed within thirty days. "This relief remains open to [Mr. Rutherford]." (Doc. #6, *PageID* #66). Consequently, he has a remaining administrative remedy he may pursue to continue receiving benefits by filing a waiver request while a challenge to the Administration's overpayment determination remain pending. The form he needs to complete and submit to the Administration is SSA-632-BK (Request For Waiver Of Overpayment Recovery). *Id.*

## III.

When the Administration sent Mr. Rutherford's benefit payment to his bank account in September 2019, the bank returned it to the Administration and temporarily suspended his September 2019 benefit payment because his bank account had been closed. (Doc. #6, *PageID* #s 83, 109). Mr. Rutherford applied for and received from the Administration an immediate emergency payment of $999.00. *Id.* This, as Mr. Rutherford points out, was $35 less than his normal monthly benefits of $1,034.00.

The Administration followed its Program Operations Manual GN 01010.300 by temporarily suspending Mr. Rutherford's September 2019 benefits because he had not kept it informed of his address or a current bank account. *See* Doc. #6, *PageID* #83 The Administration's maximum payment of immediate emergency benefits maxes out at $999. *See* Program Operations Manual RS 02004.100(B)(4); *see also* Doc. #6, *PageID* #83. The remaining $35 was subtracted from the amount Mr. Rutherford owed from the Administration's overpayment of benefits in 2018. Because this Court lacks jurisdiction over his challenge to the Administration's overpayment determination, jurisdiction is

likewise lacking over Administration's application of the $35 to reduce his amount owed stemming from the overpayment.

Mr. Rutherford asserts that the Administration should have different policies and procedures, and he asks this Court and the Supreme Court to establish procedures by, for example, setting reasonable amounts of premiums benefit recipients must pay for Medicare or Humana, and setting the amount of benefits the Administration will provide individuals like him who have mental-health disabilities.  (Doc. #3, *PageID* #s 33-36).  He asserts that if the Court determines he was charged too much for Medicare or other premiums, he asks the Court to require the Administration to pay him back the amount he overpaid for those premiums.  *Id.* at 33-34, 38-39.

Again, however, the record of this case fails to show that Mr. Rutherford obtained a final decision from an ALJ or the Appeals Council concerning the amount of his Medicare or other premiums.  This Court therefore lacks jurisdiction to review the amounts of those premiums.[2]

### IT IS THEREFORE RECOMMENDED THAT:

1.      Defendant's Motion to Dismiss (Doc. #6) be granted; and

2.      The case be terminated on the docket of the Court.


April 2, 2020                              *s/Sharon L. Ovington*
                                          Sharon L. Ovington
                                          United States Magistrate Judge

---

[2] Defendant explains that there are state programs that can help defray the costs of those premiums and information about those programs can be found at https://www.medicare.gov/your-medicare-costs/get-help-paying-costs/medicare-savings-programs, and presumably from the Ohio Department of Aging.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 19